## CIRCUIT COURT OF FAIRFAX COUNTY

Roger E. Ajaoudi
and Renee Ajaoudi

v.

C. W. Cobb & Assoc., Inc.,
Mark W. Waters, and
Jerome P. Friedlander, II

December 5, 1994

Case No. (Chancery) 135882

BY JUDGE JANE MARUM ROUSH

On October 11, 1994, this matter came before the Court for trial on Plaintiffs' Bill of Complaint. In their Bill of Complaint, the plaintiffs Roger Ajaoudi and Renee Ajaoudi (the "Plaintiffs" or the "Makers") seek to enjoin the foreclosure sale of their principal residence. The defendant C. W. Cobb & Associates, Inc., is the holder of the note secured by the lien of a deed of trust on the residence, and the defendants Mark W. Waters and Jerome P. Friedlander, II, are the substitute trustees under the deed of trust. At the conclusion of the trial, the parties submitted memoranda of law. I have now had the opportunity to review those memoranda, as well as the testimony and the exhibits entered into evidence at trial, and to consider carefully the arguments of counsel. For the reasons stated below, the Court finds that C. W. Cobb is the holder in due course of Plaintiffs' promissory

note and, as such, took the note free of the defense of discharge by release. The temporary injunction enjoining Defendants from foreclosing on the deed of trust securing repayment of Plaintiffs' note will be dissolved.

## Issues

This case presents the issues of (1) whether the holder of the note is a holder in due course and thus took the note free from certain defenses; (2) whether the release of the maker's obligation to repay a promissory note made by one not the holder of the note is effective and precludes recovery on the note by the holder of the note; and (3) whether a holder of a note who allows another to collect payments on the note has given that collection agent the real or apparent authority to release the maker's obligation to repay the note such that the holder is precluded from further recovery on the note.

## Facts

The note in question is a Promissory Note dated September 11, 1989, made by the Plaintiffs payable to the order of John Ridler and Kum Ja Ridler. The Note was in the original principal amount of $65,000, with interest accruing at the rate of 12% per annum, and was payable in sixty monthly installments of $780.10 each beginning in October of 1989. The Note was secured by the lien of a deed of trust to Plaintiffs' real property located in Springfield, Virginia.

The Note was executed by the Plaintiffs in 1989 as part payment to the Ridlers for the purchase price of a restaurant business known as the "McLean Cafe." Subsequently, the Ridlers endorsed the Note "Payable to Heritage Bank, without recourse . . . 2/14/90" as part of an agreement making Heritage Bank the collection agent of the Note. Plaintiffs were given notice by Heritage Bank that future payments were to be sent to the bank.

On August 9, 1991, the Ridlers granted defendant C. W. Cobb a security interest in the Note as collateral for a $30,000 loan from C. W. Cobb to the Ridlers. C. W. Cobb allowed the Ridlers' collection agent, Heritage Bank, to continue to receive payments under the Note made by the Plaintiffs. Pursuant to their note with C. W. Cobb (Plf's. Ex. 6), the Ridlers were required to pay to C. W. Cobb any principal payments made by the Plaintiffs under the Note in excess of $5,000 in any six month period or the amount of any principal prepayments by the Plaintiffs. In order to perfect its security interest in the Note, C. W. Cobb took possession of the Note in

August 1991. Heritage Bank endorsed the note "Payable to C. W. Cobb Associates, Inc., without recourse . . . 8/2/91." On August 9, 1991, the Ridlers endorsed the Note "Payable to C. W. Cobb & Associates, Inc., with full recourse." Heritage Bank continued to collect payments made by the Plaintiffs under the Note until December 1991, when the Plaintiffs stopped paying the Note (Plf's. Ex. 2). The Plaintiffs were not notified of the collateral assignment of the Note to C. W. Cobb.

After the collateral assignment of the Note to C. W. Cobb, the Plaintiffs became unhappy with the restaurant that they had purchased from the Ridlers. As noted above, they stopped making payments on the Note in December 1991. In February 1992, the Ridlers agreed to take back the McLean Cafe, cancel the Note, and release the Deed of Trust. The Ridlers executed a certificate of satisfaction to release the Deed of Trust, but it was not recorded despite requests from the Plaintiffs that it be recorded. The Note was not produced and returned to the Plaintiffs or otherwise destroyed or canceled. Litigation ensued between the landlord of the restaurant, the Plaintiffs, and the Ridlers. In December 1992 or January 1993, the Ridlers, the Plaintiffs, and the landlord reached a settlement of that dispute. Pursuant to the terms of the settlement, the Ridlers were ordered by the General District Court of Fairfax County to:

> execute and file a Certificate of Satisfaction for the Deed of Trust . . . which is recorded in Deed Book 7422 at Page 1484 of the Land Records of Fairfax County and that the defendants Roger Jaoudi, Renee Jaoudi [sic] . . . and Defendants John Riddler and Kum Ja Riddler [sic] releases each unto the other of and from any and all claims arising out of or relating to the purchase, lease or operation of the McLean Cafe.

Order dated January 22, 1993, entered in *Benchmark Properties, Inc. v. Roger and Renee Ajaoudi, et al.,* Case No. 92-27374 (General District Court of Fairfax County 1993) (Plf's. Ex. 4). C. W. Cobb, who was at that time the holder of the Note, was not a party to this settlement.

Despite the General District Court's Order, the certificate of satisfaction was never recorded. On January 19, 1993, three days before the General District Court's order was entered, and apparently unbeknownst to the Plaintiffs, the Ridlers filed for protection under the bankruptcy laws of the

United States.[1] On May 12, 1993, the Ridlers were discharged from their debts by the bankruptcy court.

In February 1993, after the Ridlers' bankruptcy, the Plaintiffs learned for the first time that C. W. Cobb held the Note. C. W. Cobb notified the Plaintiffs that the Ridlers' purported cancellation of the Note was invalid because C. W. Cobb was the holder of the Note. In order to foreclose on its security interest in the Note, C. W. Cobb held a public sale of the Note on October 6, 1993. C. W. Cobb was the high bidder at the sale and bought the Note for $1,000.00. Plaintiffs' attorney attended the sale and notified those attending the sale that the noteholder knew the Note had been satisfied in full (Plf's. Ex. 5).

Having purchased the Note at the sale, C. W. Cobb began foreclosure under the Deed of Trust securing the Note. In August 1994, Plaintiffs filed this action seeking to enjoin the foreclosure. A temporary injunction order was signed on September 16, 1994, enjoining the foreclosure until a decision is made in this cause.

### Discussion and Conclusions

Plaintiffs contend that C. W. Cobb is not a holder in due course of the Note because C. W. Cobb had knowledge of the defense of discharge[2] that existed at the time C. W. Cobb purchased the Note in October 1993. Alternatively, Plaintiffs argue that the Ridlers were agents of C. W. Cobb and had the real or apparent authority of C. W. Cobb to release Plaintiffs' obligations under the Note and agree to release the Deed of Trust.

C. W. Cobb responds that payment must be made to a party in possession of the Note in order to discharge the maker's liability. *See Lambert v. Barker*, 232 Va. 21 (1986). C. W. Cobb argues that the Ridlers had neither the real nor the apparent authority of C. W. Cobb to discharge the Plaintiffs' obligation under the Note. C. W. Cobb maintains that, as a holder in due course of the Note, it took the Note free from the Plaintiffs' defense of discharge.

---

[1] Although the parties did not raise the issue in their briefs, it is arguable that the General District Court's January 22, 1993, order was a nullity as a violation of the automatic stay of bankruptcy. *See* 11 U.S.C. § 362.

[2] "Discharge" as used in this context means forgiveness of the maker's obligation to pay the balance of the Note. *See* Va. Code Ann. §§ 8.3A-601, 8.3A-604 (Cum. Supp. 1994). It is not synonymous with a discharge in bankruptcy. A holder in due course would take an instrument subject to the defense of discharge in bankruptcy. Va. Code Ann. § 8.3A-305(b)(1)(iv) (Cum. Supp. 1994).

### Is C. W. Cobb a "Holder in Due Course" of the Note?

Critical to the resolution of the issues in this case is the determination of whether C. W. Cobb is a holder in due course of the Note. If C. W. Cobb is a holder in due course of the Note, it took the Note free from the Plaintiffs' defense of release and satisfaction. *See* Va. Code Ann. § 8.3A-305 (holder in due course takes instrument free from most defenses to payment of a simple contract except infancy, duress, fraud in the inducement, or discharge in bankruptcy). If C. W. Cobb is a holder in due course, two other issues arise: (i) when did C. W. Cobb became a holder in due course, and (ii) did C. W. Cobb ever lose its status as a holder in due course?

To be a holder in due course of a note within the meaning of Article 3A[3] of the Uniform Commercial Code, one must of course be a "holder" of a negotiable instrument. Section 8.1-201(20), defines a "holder" as follows:

> *"Holder"* with respect to a negotiable instrument, means the person in possession . . . in the case of an instrument payable to an identified person, if the identified person is in possession.

Va. Code Ann. § 8.1-201(20) (Cum. Supp. 1994).

The Plaintiffs did not contend at trial that the Note is not a negotiable instrument, although in their brief they state that "the Court must address . . . the issue of whether the [Note] is a negotiable instrument." The Note (Def's. Ex. 1) clearly satisfies the requirements of § 8.3A-104 as to negotiability: it contains an unconditional promise to pay a fixed amount of money, it is payable to order, it is payable at a definite time, and it "does not state any other undertaking or instruction by the person promising payment . . . to do in addition to the payment of money." Va. Code Ann. § 8.3A-104(a) (Cum. Supp. 1994).

The Note had been endorsed payable to C. W. Cobb in August 1991, at which time C. W. Cobb took possession of the Note. Accordingly, C. W. Cobb was the "identified person" to whom the negotiable instrument was payable. In that C. W. Cobb had continuous possession of the Note since August 1991, it was clearly a "holder" within the meaning of the Uniform

---

[3] Former Article 3 of Virginia's Uniform Commercial Code (Commercial Paper) was repealed and replaced by Article 3A effective January 1, 1993. Each party cited, without discussion of the applicability of the new Article 3A, former Article 3. This cause was commenced in August 1994. I will apply Article 3A in this analysis, although my rulings would be the same under either Article 3 or Article 3A.

Commercial Code at the time of the 1992 transactions between the Plaintiffs and the Ridlers.

Was C. W. Cobb a "holder in due course"? Code § 8.3A-302 defines a holder in due course as:

> the holder of an instrument if . . . . (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored . . . (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in § 8.3A-306, and (vi) without notice that any party has a defense or claim in recoupment described in § 8.3A-305(a).

Va. Code Ann. § 8.3A-302(a)(2) (Cum. Supp. 1994).

There is no allegation that the Note in this case had been forged or was so irregular on its face as to call into question its authenticity. Accordingly, the requirements of Code § 8.3A-302(a)(1) will not be addressed.

The Plaintiffs argue that, when C. W. Cobb purchased the instrument in October 1993, it had notice of the Plaintiffs' defense and thus C. W. Cobb cannot be a holder in due course. C. W. Cobb responds that the Plaintiffs are looking to the incorrect time to determine C. W. Cobb's holder in due course status. C. W. Cobb argues that it became a holder in due course in August 1991 and never lost that status.

The Court finds that C. W. Cobb is correct in its assertion that the determination of a holder's status as a holder in due course is determined at the time the holder took possession of the instrument and is not defeated by the holder's subsequent acquisition of knowledge of a defense to payment of the instrument as long as the holder's possession of the instrument note remains continuous. The case of *In re Valentine*, 146 Bankr. Rep. 945 (Bankr. E.D. Va. 1991), relied upon by Plaintiffs, is easily distinguishable from the case at bar. In *Valentine*, Gilliam, who was a holder in due course of a note, endorsed the note back to a prior holder and returned possession of the note to the prior holder. Later, the note was endorsed back to Gilliam when he had notice that the note was overdue. The bankruptcy court held that Gilliam lost his status as a holder in due course during the interim period "because he was not a holder" during that time, having returned possession of the note to another. Gilliam's subsequently reacquiring possession of the note did revive his holder in due course status when, at the time he regained possession of the note, he had notice that it

was overdue. In this case, C. W. Cobb has had continuous possession of the Note since August 1991. The appropriate inquiry, then, is whether C. W. Cobb became a holder in due course of the Note in August 1991 when it first acquired the Note.

C. W. Cobb took the Note for "value," as required by § 8.3A-302(a)(2)(i). C. W. Cobb took the Note as collateral for its $30,000 loan to the Ridlers. Article 3A makes clear that a note is transferred for value if "the transferee acquires a security interest or other lien in the instrument other than a lien obtained by a judicial proceeding." Va. Code Ann. § 8.3A-303(a)(2) (Cum. Supp. 1994). *See also Lambert*, 232 Va. at 26, n. 6 (pledgee of an instrument may be a holder in due course to the extent of pledgee's interest).

There is no allegation that C. W. Cobb took the Note in August 1991 in other than "good faith" as required by § 8.3A-302(a)(2)(ii).

No evidence was adduced at trial to suggest that in August 1991 C. W. Cobb had notice that the Note was overdue or had been dishonored within the meaning of § 8.3A-302(a)(2)(iii). The record reflects that in fact the Plaintiffs may have been one or two months behind in their payments on the Note on that date (Plf's Ex. 2), however, there is no evidence that C. W. Cobb had notice of that situation. Indeed, Mr. Ajaoudi testified on cross examination that he and his wife were making payments on the Note in August 1991 and that the Note was not then in default.

It is not alleged that the Note contained an unauthorized signature or had been altered, notice of which would negate C. W. Cobb's holder in due course status under § 8.3A-302(a)(2)(iv).

On August 9, 1991, C. W. Cobb had no notice of any claims against or defenses to the Note within the meaning of § 8.3A-302(a)(2)(v) or (vi). The Plaintiffs do not claim that any defenses to payment existed on that date. The agreement by the Ridlers to forgive the balance of the Note did not occur until approximately February 1992, several months after C. W. Cobb acquired the Note in August 1991.

All of the requirements of § 8.3A-302 for holder in due course status were satisfied by C. W. Cobb when it acquired possession of the Note. Accordingly, the Court concludes that C. W. Cobb became a holder in due course of the Note no later than August 9, 1991. Once a holder is a holder in due course of an instrument, it does not lose that status by subsequently acquiring knowledge of defenses against the instrument. Thus, C. W. Cobb's purchase of the Note in October 1993, after it had notice of the Plaintiffs' claim of full payment, did not destroy the holder in due course

status it enjoyed since August 1991. As a holder in due course, C. W. Cobb took the Note free from the Plaintiffs' defense of satisfaction and release. Va. Code Ann. § 8.3A-305(b) (Cum. Supp. 1994).

*Were the Ridlers Agents of C. W. Cobb for the*
*Purpose of Releasing the Note and Deed of Trust?*

Even if C. W. Cobb is a holder in due course, the Plaintiffs contend, the Ridlers were C. W. Cobb's agent for the purpose of collecting the Note and, as such, the Ridlers had the real or the apparent authority to cancel the Note and agree to release the Deed of Trust. *See* Va. Code Ann. § 8.1-103 (the law of principal and agent supplements the provisions of the UCC).

Plaintiffs rely on the Virginia Supreme Court's interpretation of former Code § 8.3-603, the predecessor provision to present Code § 8.3A-602, in *Lambert* and *American Security Co. v. Juliano, Inc.*, 203 Va. 827 (1962). Former § 8.3-603 stated, in pertinent part: "[t]he liability of any party is discharged to the extent of his payment or satisfaction to the holder." *Lambert* held that "[p]ayment to an authorized agent of the holder will also satisfy the requirement of payment to the holder, resulting in discharge . . . . But the burden of proving an agency relationship rests on the party claiming payment as a defense." *Lambert*, 232 Va. at 25.

Present Code § 8.3A-602 provides that "an instrument is paid to the extent payment is made . . . to a *person entitled to enforce* the instrument." Va. Code Ann. § 8.3A-602 (Cum. Supp. 1994) (emphasis added). A "person entitled to enforce" an instrument is a new concept introduced by Article 3A. The term is defined by § 8.3A-301 as:

> (i) the holder of the instrument, (ii) a noteholder in possession of the instrument who has the rights of a holder, (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 8.3A-309 [regarding lost, stolen or destroyed instruments] or § 8.3A-418(d) [regarding the payor or acceptor of a payment or acceptance by mistake]. A person may be entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

Va. Code Ann. § 8.3A-301 (Cum. Supp. 1994). While that section would appear to require in general that a person have possession of the instrument in order to be a "person entitled to enforce" the instrument, the

Official Comment makes clear that a "person entitled to enforce" includes "any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights." It would appear, then, that the *Lambert* court's holding that payment to the authorized agent of a holder is also payment to the holder would be equally applicable to an analysis of whether the Ridlers were "person[s] entitled to enforce" the Note who could discharge the Plaintiffs' obligations under the Note.

Code § 8.3A-604 provides that a "person entitled to enforce" the instrument may, with or without consideration, discharge the obligation of a party to pay an instrument. As noted above, a "person entitled to enforce" an instrument may include non-holders of the instrument, if that person "acquires the holder's rights." Va. Code Ann. § 8.3A-301, Official Comment. The question becomes, therefore, whether the Ridlers had the authority of C. W. Cobb, the holder in due course of the Note, to cancel the Note and agree to release the Deed of Trust.

Plaintiffs contend C. W. Cobb gave authority to the Ridlers to cancel the Note pursuant to the terms of the note between the Ridlers and C. W. Cobb (Plf's Ex. 6). A careful reading of the agreement between C. W. Cobb and the Ridlers, however, does not support Plaintiffs' argument. The agreement implicitly allowed the Ridlers (through their collection agent, Heritage Bank) to continue to collect payments on the Note from the Plaintiffs. The Ridlers were expressly required to pay to C. W. Cobb any principal prepayments or principal payments in excess of $5,000 received from the Makers in any six month period. Nothing in the C. W. Cobb/Ridler agreement authorizes the Ridlers to cancel the Note or release the Deed of Trust prior to payment in full of the Note. Furthermore, the Plaintiffs' have cited no authority for the proposition that a holder of a note cloaks another with implied authority to discharge that note by less than full payment simply because the other is allowed to collect payments on the note.

There is no requirement that a holder of a note who is not the original payee of the note give notice to the maker of his having acquired the note in order for the holder to enforce his rights in the note. That argument was expressly rejected by the Virginia Supreme Court in *Lambert v. Barker*. In that case, it was held that a collateral assignee of a note is not required to notify the makers of the note of the assignment. The Court reasoned that "the makers are protected because they can demand production of the instrument and refuse payment to anyone other than the holder." 232 Va. at 24. The Court made clear that the onus is on the maker who deals with one not in possession of the note to protect himself:

> If payment is made to a party who does not have in hand the obligation, the debtor takes the risks of such party having the authority to make collection.

*Lambert*, 232 Va. at 25, *quoting American Security Co.*, 203 Va. at 833.

The burden of proving the agency relationship rests on the party claiming discharge as a defense. In this case, Plaintiffs did not meet their burden of proving that the Ridlers' discharge of the Plaintiffs' obligation to pay the balance of the Note and agreement to release the Deed of Trust were done with the express or implied authority of C. W. Cobb, the Note's holder. Thus, the Court finds Plaintiffs' settlement with the Ridlers did not discharge their obligation under the Note.

The Court will enter an order dissolving the temporary injunction of the foreclosure proceedings instituted by the Defendants.